IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARISSA HEUSTIS,<br><br>         Plaintiff,<br><br>vs.<br><br>JOE ORSI, an individual; KENNETH L. SMITH, individually and in his capacity as President of FRONTIER LEASING AND SALES, INC. and DAVE SMITH CHEVROLET OLDSMOBILE PONTIAC CADILLAC, INC.; FRONTIER LEASING AND SALES, INC., an Idaho corporation; DAVE SMITH CHEVROLET OLDSMOBILE PONTIAC CADILLAC, INC., an Idaho corporation,<br><br>         Defendants. | CASE NO. 05-CV-502-N-ELJ<br><br>MEMORANDUM ORDER |

Pending before the Court in the above-entitled matter is Defendants' Motion for

Summary Judgment (Docket No. 21).  The matter is now fully briefed.  Having fully

reviewed the record, the Court finds that the facts and legal arguments are adequately

presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and

because the Court conclusively finds that the decisional process would not be significantly

aided by oral argument, this matter shall be decided on the record before this Court without

oral argument.

MEMORANDUM ORDER-1

Factual Background

Plaintiff Carissa Heustis ("Ms. Heustis") was hired by Frontier Leasing and Sales,

Inc. ("Frontier") on April 6, 2004.  Frontier Leasing and Sales is the owner of Dave Smith

Motors.  The position she was hired for was that of a used car salesperson although she

agreed to fill in as the receptionist for a few days when she first started.  After a few days of

receptionist duties, Ms. Heustis was a full-time salesperson who was paid on a commission

basis for the vehicles she sold.  At the time she was hired, Bonnie Gunderson, Director of

Human Resources for Dave Smith Motors and Frontier, provided and reviewed the

company's anti-sexual harassment policy with Plaintiff.  Human Resources Director and the

written policy indicated the process for complaints of a sexual harassment nature and

identified the managers employees should contact if they had complaints under the policy.

Such management personnel were Bonnie Gunderson, Ray Flaherty, Ken Smith, Joe Orsi,

Kevin Hunter and Michelle Dahl.

Ms. Heustis' supervisor at Frontier was the general manager, Joe Orsi.  Ms. Heustis

claims on the drive to Kellogg for a drug test, Mr. Orsi asked about her personal

relationships and placed his hand on her knees and began rubbing her knee.  Plaintiff sold

her first vehicle on Saturday, April 10, 2004.  Mr. Orsi offered to take her out for a drink to

celebrate the sale.  Ms. Heustis claims Mr. Orsi acted inappropriately that evening by

introducing her as his girlfriend and his "new beauty," touching her hand, face, leg back and

shoulder as the night went on.  She also claims he asked her to go home with him which she

refused and then he kissed Plaintiff.

Mr. Orsi denies Plaintiff's allegations regarding his conduct.  It is undisputed that Ms. Heustis did not report the alleged sexual harassment incident to any of the identified persons in the company's policy.  Plaintiff claims she informed the finance manager, Karen Armstrong, of the inappropriate contact by Mr. Orsi a few weeks after it happened and that Ms. Armstrong laughed it off as a joke and stated Mr. Orsi was just mad she would not date him.  Ms. Armstrong states in her affidavit that Plaintiff reported to her that Mr. Orsi was a gentleman when they went for a drink on April 10, 2004.  Ms. Armstrong states Plaintiff did not tell her that she was being harassed by and retaliated against by Mr. Orsi and that if such a claim had been made by Ms. Heustis, Ms. Armstrong would have put her in touch with the identified managers in the anti-sexual harassment policy.

Ms. Heustis also testified in her deposition that she told manager Mary Crawford about the April 10, 2004 incident about a month after telling Ms. Armstrong and that while discussing the incident with Ms. Crawford, Ms. Armstrong was also in the room and neither manager encouraged Plaintiff to contact Mr. Gunderson.  Ms. Crawford's affidavit indicates she did not observe any events which she considered constituted sexual harassment and did not recall ever observing Mr. Orsi speaking to Ms. Heustis in a sexually derogatory manner.  Moreover, Ms. Crawford states "I have never been advised by Carissa Heustis that she felt she had been sexually harassed by Joe Orsi or any other employee at Frontier Leasing & Sales."  Crawford Affidavit, Docket No. 21-7, p. 4.

Plaintiff maintains that after the April 10th incident, Mr. Orsi did not speak to her for the next few weeks and gave her dirty looks.  When Mr. Orsi did speak he said he had a good time and would like to go out again.  Ms. Heustis claims Mr. Orsi would not have the

brakes repaired on a vehicle she was personally purchasing from Frontier although such repair work was done for other employees in similar situations.  Ms. Heustis testified in her deposition that Mr. Orsi would not ever "spoon" her a deal the way he would male employees.  Ms. Heustis claimed Mr. Orsi used vulgar language, told off color jokes and described his intimate relationship with his girlfriend in front of her and the other employees.

Mr. Orsi claims he never spoke in a derogatory manner to Ms. Heustis, but that he did curse and use vulgar language at times.  He also notes and other employees agree and the Plaintiff admits that Plaintiff used vulgar language at times and told off color jokes just like the other employees.  Ms. Heustis does not dispute that she never complained of the language and jokes told by Mr. Orsi to any of the other managers, many of whom were women.  Moreover, many co-employees have filed affidavits that they never observed any harassment by Mr. Orsi of Plaintiff or any other employee.  Ms. Nicole Stephenson acknowledges in her affidavit that on occasion Mr. Orsi would hug a female employee as a greeting, but that she also hugged Mr. Orsi in that context and that such hugs were never unwelcome and were not offensive.  Absent the alleged incident between Ms. Heustis and Mr. Orsi of April 10, 2004, there are no allegations by Plaintiff of any inappropriate touching by Mr. Orsi of herself or other employees.

Gary Leat, the team leader of Ms. Heustis's sales team at Frontier,  corroborates that he overheard Mr. Orsi use vulgar language daily and use derogatory words about women in front of the women employees at Frontier.  Mr. Leat gave examples of Mr. Orsi saying "nice ass, great boobs, nice camel toe."  Excerpts of Leat Deposition, Exhibit B to Docket No. 27, p. 20 of deposition.

Ms. Heustis claims that when other employees learned that Mr. Orsi had taken Ms. Heustis out and tried to kiss her, Heustis became the joke of the dealership and that she continually received harassing comments from the male salespersons she worked with regarding the Orsi incident.  No specifics of what was said has been provided by Ms. Heustis.

On February 12, 2005, Plaintiff writes in her diary that she ran into Ken Smith, the President of Frontier, while at a bar and after partying with him and her friends that later that evening he kissed Ms. Heustis and invited her and her friend to stay the night with him.

On February 20, 2005, Ms. Heustis was involved in a commission dispute with another sales person, Jim Rouse.  It is undisputed that the two salespersons were arguing and using foul language towards each other as Mr. Rouse maintained he was entitled to a portion of the commission on a sale that Ms. Heustis had closed.  The vulgar language used by Mr. Rouse included derogatory female terms.  After several minutes, Mr. Orsi told the two to "knock it off" and the two salespersons went their separate ways.  Ms. Heustis reported the incident to Ms. Gunderson and said Mr. Orsi observed the argument without intervening for several minutes.  Ms. Gunderson and Mr. Flaherty investigated the incident by interviewing numerous eyewitnesses to the shouting match and all the witnesses stated Mr. Orsi was not present while the argument was taking place until he yelled to "knock it off."  A determination was made that both employees were at fault and a meeting was scheduled with Ms. Heustis and Mr. Rouse.  Ms. Heustis did not attend the meeting and never returned to work for Frontier Leasing and Sales.  Mr. Rouse attended the meeting and a written reprimand was placed in his file.  Prior to the meeting with management, Mr. Rouse

apologized to his fellow employees for his conduct, but was unable to apologize to Ms.

Heustis as she did not return to work.

At the same time Ms. Heustis complained of the incident with Mr. Rouse, she

informed Ms. Gunderson of the alleged actions of Mr. Orsi on April 10, 2004 as well as

other issues related to the work environment at Frontier.  Ms. Gunderson did not have the

opportunity to investigate this incident before Ms. Heustis quit her employment at Frontier.

Throughout her employment at Frontier, Ms. Heustis was not demoted or transferred.

She was paid at the same rate as other salespersons and never received a cut in salary or

other adverse employment action.

On April 25, 2005, Plaintiff signed a formal complaint of discrimination against

Frontier and Dave Smith Motors with the United States Equal Employment Opportunity

Commission ("EEOC").[1]  See Exhibit 1 to Gunderson Affidavit, Docket No. 21-4.  The

EEOC received the complaint on April 28, 2005. Id.  On September 7, 2005, the EEOC

issued a Right to Sue Letter to Plaintiff.  On December 5, 2005, Plaintiff filed her Complaint

in Federal District Court alleging a hostile work environment, retaliation, gender

discrimination, and constructive discharge in violation of Title VII and the Idaho Human

Rights Act ("IHRA").  Plaintiff also alleges negligent hiring and/or supervision, negligence

per se and intentional infliction of emotional harm.  Defendants deny the claims of Plaintiff.

---

[1]Paragraph 28 of Plaintiff's complaint indicated that a formal complaint of discrimination was filed with the Idaho Human Rights Commission ("IHRC") on April 25, 2008.  The Court finds no record of the Plaintiff independently filing of a complaint with the IHRC.  The Plaintiff's filed date refers to the date Plaintiff signed the complaint, not the date the complaint was actually received by the EEOC.

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of

Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is

mandated if the non-moving party fails to make a showing sufficient to establish the

existence of an element which is essential to the non-moving party's case and upon which the

non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477

U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential

element, "there can be no `genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial."  Id. at 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of

summary judgment, must be both "material" and "genuine."  An issue is "material" if it

affects the outcome of the litigation.  An issue, before it may be considered "genuine," must

be established by "sufficient evidence supporting the claimed factual dispute . . . to require

---

[2] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleadings, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial. If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent,

523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S.

253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car

Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary

judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with
> respect to any element for which it bears the burden of proof; (2) must show
> that there is an issue that may reasonably be resolved in favor of either party;
> and (3) must come forward with more persuasive evidence than would
> otherwise be necessary when the factual context makes the non-moving
> party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence

in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).


Analysis

1.  Statute of Limitations

Plaintiff filed her claim with the EEOC on April 29, 2005.  Defendants argue since it

is undisputed that Plaintiff did not file proceedings before the Idaho Human Rights

Commission ("IHRC"), 180 day statute of limitations applies to her claims and alleged

discriminatory actions outside the 180 days must be excluded from consideration. Plaintiff

argues the 180 day limit does not apply as Plaintiff is alleging an ongoing hostile work

environment.

MEMORANDUM ORDER-8

The applicable statute of limitations is relevant because the alleged harassment by Mr. Orsi on April 10, 2004 would be outside the statute of limitations unless it could be considered as part of an ongoing hostile work environment.  Plaintiff's administrative claim was received by the EEOC on April 28, 2005.  See 29 C.F.R. 1601.12(b); Casavantes v. California State University, Sacramento, 732 F.2d 1441, 1443 (9th Cir. 1984) (a completed EEOC questionnaire constitutes a charge). One hundred eighty day period would mean all discriminatory events occurring prior to October 29, 2004[3] (180 days prior to April 28, 2005) would be barred.  Three hundred day period would mean all discriminatory events occurring prior to July 1, 2004 (300 days prior to April 28, 2005) would be barred.

The EEOC provides for a 180 day or a 300 day statute of limitations from the date the alleged discrimination occurred.  The applicable deadline depends on whether the plaintiff also filed the charge in a deferral jurisdiction.  Idaho is a deferral state with a fair employment agency which is the IHRC.  29 C.F.R. § 1601.80.  There is no record before the Court that Plaintiff ever filed a complaint with the IHRC or that the EEOC deferred the complaint they received to the IHRC.  Bouman v. Block, 940 F.2d 1211, 1220 (9th Cir. 1991 (if the EEOC transmits the charge to the fair employment practices agency during the deferral period, the 300 day period applies).  However, the third page of the EEOc complaint states: "I want this charge filed with both the EEOC and the State or local Agency, if any."  The IHRC is listed as the state agency on page three of the complaint.  Plaintiff need not initiate proceedings with the state fair employment agency first in order to receive the 300

---

[3]Defendants argue in their briefing that 180 days would be October 1, 2004, however the Court comes up with October 30, 2004 as being 180 days from the April 29, 2005 EEOC filing date.

day period.  See Wiltshire v. Standard Oil Co. of California, 652 F.2d 837, 842 (9th Cir.

1981).  In this case, the Court is satisfied that Plaintiff requested her complaint be sent to the

IHRC when she filed with the EEOC.  In determining whether a complaint was dual filed, it

does not matter whether it was actually forwarded to the IHRC, only whether it was

"intended" to be forwarded under the worksharing agreement between the EEOC and IHRC.

See Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172 (9th Cir. 1999).  Accordingly, the

Court finds the 300 day time limit applies to Plaintiff's complaint.

The Court may only look at events beyond the 300 day time limit if the Plaintiff can

establish an "on going" hostile work environment.  See Nat'l Railroad Passenger Corp. v.

Morgan, 536 U.S. 101 (2002).  "A discrete retaliatory or discriminatory act 'occurred' on the

date that it 'happened." Id. at 110.  "There is simply no indication that the term [unlawful

employment] 'practice' converts related discrete acts into a single unlawful practice for the

purposes of a timely filing." Id. at 111.  "The existence of past acts and the employee's prior

knowledge of their occurrence, however, does not bar employees from filing charges about

related discrete acts so long as the acts are independently discriminatory and charges

addressing those acts are themselves timely filed." Id. at 113.  "Nor does the statute bar an

employee from using prior acts as background evidence in support of a timely claim." Id.

The Supreme Court discussed how hostile environment claims are different from

discrete acts as the very nature of a hostile environment involves repeated conduct. Id. at

115.  " A hostile work environment claim is composed of a series of separate acts that

collectively constitute one 'unlawful employment practice.'" Id. at 117.

> It does not matter, for purposes of the statute, that some of the
> component acts of the hostile work environment fall outside the statutory time

MEMORANDUM ORDER-10

period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Id.

In this case and for purposes of analyzing the summary judgment motion, the Court finds the alleged hostile work environment can cover the entire time period Plaintiff worked at Frontier as she claims the harassment began when she started working and continued until she failed to return to work in February 2004.[4]

2.  Hostile Work Environment

There are two types of sexual harassment prohibited by Title VII.  "Quid pro quo" when a job action is dependent on the provision of sexual favors and "hostile environment" sexual harassment when the work environment is unpleasant and unacceptable based upon the considerations of sex (e.g. jokes, language, unwanted touching).   Hostile work environment claims may also be broken down further depending on whether a tangible job detriment is or is not present.   A tangible job detriment includes, but is not limited to, a reduction in pay, demotion, discharge or failure to promote.  In the present case, Plaintiff does not allege quid pro quo sexual harassment, only a hostile working environment without a tangible job detriment.

---

[4]Since Plaintiff admits that Mr. Orsi did not sexually harass her again after the April 10, 2004 incident, the Court would have the jury determine if the alleged actions by Mr. Orsi on April 10, 2004 were a discrete event or part of the hostile work environment if this matter was to go to trial.

For purposes of the motion for summary judgment, the Court finds there are genuine

issues of material fact related to whether a hostile work environment existed. First, Plaintiff

must establish a prima facie case for a hostile work environment.  To establish a prima facie

hostile work environment claim under Title VII, the employee must raise a triable issue of

fact as to whether (1) she was subjected to verbal or physical conduct because of her sex, (2)

conduct was unwelcome, and (3) conduct was sufficiently severe or pervasive to alter

conditions of her employment and create an abusive work environment.  Harris v. Forklift

Systems, Inc., 510 U.S. 17 (1993).  In Harris, the Supreme Court detailed factors to consider:

frequency and severity of the conduct; whether the conduct was physically threatening or

humiliating as opposed to a mere offensive utterance and whether the conduct unreasonably

interfered with an employee's work performance and determined harassment is prohibited

by both co-workers and supervisors.  The Ninth Circuit has held  "the working environment

must both subjectively and objectively be perceived as abusive."  Fuller v. City of Oakland,

47 F.3d 1522, 1527 (9th Cir. 1995) (citing Harris, 510 U.S. at 21-22).  The "objective"

portion is based on the perspective of the reasonable victim.  Brooks v. City of San Mateo,

229 F.3d 917, 924 (9th Cir. 2000) (citing Ellison v. Brady, 924 F.2d 872, 879, (9th Cir.

1991)).  The Court examines the totality of the circumstances to determine whether a

plaintiff's allegations rise to the level of a colorable claim of a hostile work environment.

"The required showing of severity or seriousness of the harassing conduct varies inversely

with the pervasiveness or frequency of the conduct."  Id. at 926.   "Simple teasing, offhand

comments and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of employment."  Manatt v. Bank of

Am., NA, 339 F. 3d 792, 798  (9th Cir. 2003) (citations and quotation marks omitted).  See

also Vasquez v. County of Los Angeles, 349 F. 3d 634 (9th Cir. 2004).

Plaintiff alleges she was treated differently and more harshly because she is a woman

and that hostile comments were regularly made to her by fellow employees and supervisors.

Defendants argue the alleged conduct is insufficient and lacks the severity required to qualify

as creating a hostile work environment based on sex.  The factual record before this Court

indicates genuine issues of material fact exist regarding the nature and alleged severity of the

conduct towards Ms. Heustis.

However, even assuming the hostile work environment, the Court agrees with

Defendants that the employer in this case would be entitled to an affirmative defense since it

is undisputed Frontier has a policy against sexual harassment and correcting harassing

behavior, Ms. Heustis was aware of the policy and there is no evidence in the record

indicating Ms. Heustis used or attempted to use the existing company policy to complain

about the hostile working environment.  See Faragher v. City of Boca Raton, 524 U.S. 775

(1998) and Burlington Industries v. Ellerth, 524 U.S. 742 (91998).

Ms. Heustis argues she complained of the sexual harassment by Mr. Orsi to other managers

(Ms. Armstrong and Ms. Crawford) than those listed in the policy and that disclosure should

satisfy the company policy.  The Court respectfully disagrees that telling someone other than

the numerous managers identified and listed in the anti-harassment policy put the employer

on notice of the harassment claims of Plaintiff and satisfies the requirement that a plaintiff

"used or attempted to use" the company policy.   Therefore, assuming the hostile work

environment was severe and pervasive, the complaining employee in this case acted

unreasonably and the Defendants would be entitled to the affirmative defense as a matter of law.

3. Constructive Discharge

In  Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries v. Ellerth, 524 U.S. 742 (1998), the Supreme Court ruled that in any situation where sexual harassment by a supervisor with immediate or successively higher authority results in tangible detrimental employment action, the employer is strictly liable for that action, even if the employer or its management had no knowledge the harassment was taking place.  To the extent that Plaintiff's complaint alleges a tangible job detriment in the form of "constructive discharge," the Court finds the above employer defense would still apply since the alleged compelled resignation occurred without a tangible employment action.   See Pennsylvania State Police v. Suders, 542 U.S. 129 (2004) (considering whether the Faragher/Ellerth affirmative defense is available in a constructive discharge case).  In this case, Ms. Heustis elected not to return to work, the employer did not fire her.

4.  Gender Discrimination

Ms. Heustis also appears to allege a disparate treatment sexual or gender discrimination claim.  To survive summary judgment on her disparate treatment claim, Ms. Heustis must establish that her job performance was satisfactory and provide evidence, either direct or circumstantial, to support an inference that her termination was discriminatory. "The amount of evidence [Plaintiff] must produce is 'very little,' so long as it is more than

'purely conclusory allegations of alleged discrimination, with no concrete, relevant

particulars.'"  Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004) (citing

Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988).

The Court then analyzes the evidence presented under the McDonnell Douglas

burden-shifting framework.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct.

1817, 36 L. Ed. 668 (1973).  Plaintiff has the burden of establishing a prima facie case by

showing: "(1) she is belongs to a protected class; (2) she was performing according to her

employer's legitimate expectations, (3) she suffered an adverse employment action; and (4)

other employees with qualifications similar to her own were treated more favorably."

Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citing McDonnell

Douglas Corp., 411 U.S. at 802, 93 S.Ct. 1817).

> Upon these showings, the burden shifts to the defendant to produce
> some evidence demonstrating a legitimate, nondiscriminatory reason for the
> employee's termination.  If the defendant meets this burden of production, any
> presumption that the defendant discriminated "drops out of the case," and the
> plaintiff must then show that the defendant's alleged reason for termination
> was merely a pretext for discrimination.  The burden of persuasion, as
> opposed to production, however, remains with the plaintiff at all times.  A
> plaintiff  "may prove pretext 'either directly or by persuading the court that a
> discriminatory reason more likely motivated the employer or indirectly by
> showing that the employer's proffered explanation is unworthy of credence.'"
> The evidence proffered can be circumstantial or direct.  "When the
> plaintiff offers direct evidence of discriminatory motive, a triable issue as to
> the actual motivation of the employer is created even if the evidence is not
> substantial . . . .  Direct evidence is evidence, which, if believed, proves the
> fact of discriminatory animus without inference or presumption."  "[W]here
> direct evidence is unavailable, however, the plaintiff may come forward with
> circumstantial evidence . . . to show that the employer's proffered motives
> were not the actual motives because they are inconsistent or otherwise not
> believable.  Such evidence . . . must be 'specific' and 'substantial' in order to
> create a triable issue with respect to whether the employer intended to
> discriminate on the basis of [a prohibited ground]."

Bodett v. Coxcom, 366 F.3d 736, 743 (9th Cir. 2004)(citations omitted).

In a mixed motive sex discrimination claim, Plaintiff needs to establish that the sex discrimination was one factor in the discrimination, but not the only factor.  Stated another way, Plaintiff need only demonstrate that sex was a "motivating factor" in the decision made by the employer.  See Cordova v. State Farm Ins. Cos., 124 F.3d 1145 (9th Cir. 1997).

For purposes of the motion for summary judgment, the Court finds Plaintiff has not established her prima facie case of sexual discrimination.  Plaintiff has not offered direct evidence of discriminatory intent and she has not set forth sufficient evidence to satisfy the four prong McDonnel Douglas test to allow unlawful discrimination to be presumed.  In this case, Plaintiff has established she belongs to a protected class and that she had performed well as a salesperson.  Plaintiff has not established that she suffered an adverse employment action by her employer of being terminated, paid less than other salespersons, not being promoted, being demoted, etc.  Accordingly, Ms. Heustis has not established a prima facie case for sex discrimination and the claim must be dismissed.


5.  Retaliation

To make out a prima facie case of retaliation under Title VII, employee must establish that: (1) she engaged in protected activity, such as filing a complaint alleging sexual discrimination, (2) employer subjected her to adverse employment action, and (3) causal link exists between protected activity and adverse action.  As a matter of law, this claim must be dismissed as there is no evidence Plaintiff suffered an adverse employment action after filing her complaint with Ms. Gunderson or the EEOC.  Ms. Heustis was not

demoted or compensated differently that other salespersons.  Moreover, there was no

retaliation possible as before the complaints to Ms. Gunderson in February 2005 regarding

Mr. Orsi and the Mr. Rouse could be investigated, Plaintiff decided not to return to work and

she filed her EEOC complaint after she left the employment of Frontier.  Finally, to the

extent Plaintiff claims Mr. Orsi retaliated against her after the alleged April 10, 2004

incident, the Court finds the examples of retaliation are not capable of being substantiated as

Plaintiff has provided insufficient data of how others were treated on the personal purchase

of automobiles or in the assignment of "spoon" sales by Mr. Orsi.  These claims do not rise

to the level of being "an adverse employment action" towards Plaintiff and the retaliation

claim must be dismissed.


6. State Law claims

Violations of the IHRA for hostile work environment, sex discrimination, retaliation

and constructive discharge rely on the same legal tests as for violations of Title VII.  See

Bowles v. Keating, 100 Idaho 808, 812, 606 P.2d 458, 462 (1979).  Since this Court has

found that the federal claims do not survive summary judgment, the state law claims must

also fall.  Since the federal and state law employment law claims fail, the state law claims for

negligent hiring and/or supervision, negligence per se and intentional infliction of emotional

distress must be dismissed as a matter of law.

ORDER

Being fully advised in the premises, the Court hereby orders that Defendants' Motion

for Summary Judgment (Docket No. 21) is GRANTED and Plaintiff's claims are dismissed

in their entirety.

DATED:  **June 19, 2007**

Honorable Edward J. Lodge
U. S. District Judge